***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except for minor modifications.
 ***********
Based upon all the competent credible evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, age fifty-three, began working for defendant-employer in 1983. For the last several years prior to the hearing, plaintiff was a "lead person" and work order closure clerk. Her average weekly wage was $672.10.
2. On December 28, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she was squatting down to clean debris out of her work area with an air hose. The end came off and the air hose began hitting her in the face. The metal part of the hose hit her, cutting from under her nose to her left lower cheekbone. The hose also hit plaintiff in the right side of the face. Plaintiff tried to push the air hose away using her right arm, but she could not. When she yelled for help, a co-worker brought the air hose under control.
3. The defendant-employer sent her to Dr. D. Michael Mahan in Oxford who examined plaintiff and noted soft tissue swelling under her lip and under her right cheek and in her right eye. X-rays showed no acute fractures. Plaintiff was given prescriptions and told to keep ice packs on her face. Her right eye became so swollen that it closed.
4. Plaintiff returned to work the next day because certain work had to be completed for the end of the year.
5. Within the week the plaintiff began feeling pressure on the fingers of her right hand and began dropping things with her right hand. Her vision in the right eye was blurred and she began having dizzy spells. She was referred to Dr. Michael L. Soo, a neurologist at the Durham Clinic, P.A.
6. Dr. Soo first examined plaintiff on January 11, 1996 for complaints of pain and numbness down on the right side of her face, shooting pain and numbness down her right arm, neck pain and a feeling of imbalance. An MRI of the brain and cervical spine x-rays were within normal limits. Dr. Soo recommended physical therapy for plaintiff's cervical strain. By March 1996, plaintiff was improving but continued to have pain in the right side of her neck and right shoulder, and pain and headaches resulting from her facial injury.
7. When Dr. Soo examined plaintiff on May 2, 1996, he noted that her face pain was better but that she was having recurrent migrainoid headaches, mainly on the right side where she was injured. Plaintiff reported that several of the episodes of headaches were so severe that they were accompanied by vomiting and that she had to leave work as a result. Dr. Soo increased the medication for her headaches.
8. By October 4, 1996 when plaintiff saw Dr. Soo, her headaches had worsened and she had been out of work since October 1, 1996. Dr. Soo recommended that she take a 21 day leave of absence. He also recommended that she have an ENT evaluation for the continued right face pain as well as the congestion of breathing in the right nasal passage. He also changed her headache medication.
9. As a result of the injury by accident, the plaintiff was unable to earn wages with defendant-employer or in any employment form from October 1, 1996 through October 21, 1996.
10. Dr. Bruce T. Malenbaum of the Durham Clinic, P.A. performed an ENT examination of the plaintiff on October 7, 1996. Along with her other symptoms, the plaintiff reported that she had been unable to breathe normally out of her right nasal passage since her facial injury. Dr. Malenbaum ordered a complete CT scan of the sinuses, which revealed a nasal septum, deviated to the right. On November 18, 1996, Dr. Malenbaum again examined plaintiff and noted that the work-related accident could have certainly caused a septal fracture, which would result in nasal obstruction worse on the right side, and led to her nasal obstruction. He recommended nasal septoplast surgery to correct the nasal deformity and nasal obstruction.
11. Defendant-Employer sent plaintiff to Dr. James H. Whicker of Raleigh Ear, Nose and Throat for a second opinion. Dr. Whicker concurred with Dr. Malenbaum's surgery recommendation. Dr. Malenbaum performed the surgery on April 14, 1997. Plaintiff was unable to work from April 14, 1997 through April 28, 1997. She continued to have problems with her sinuses.
12. Meanwhile, though plaintiff continued treatment with Dr. Soo for her headaches, she went to Dr. Robert E. Price, Jr., a neurosurgeon with Durham Clinic, in March, 1997 for a second opinion regarding her facial pain, right shoulder pain and right arm pain and numbness. Dr. Price ordered EMGs of plaintiff's right arm, which revealed no nerve damage. He also ordered a repeat MRI and cervical spine x-ray, which revealed some degenerative disk disease and spur formation at C4-5 and C5-6. However, there was no evidence of any nerve root compression. Dr. Price instructed plaintiff that she could return to her normal activities with regard to her facial, shoulder and arm pain.
13. Plaintiff was unable to work due to her sinus problem on July 22, 1997 and on August 21, 1997. Dr. Malenbaum recommended revision septoplasty surgery for her persistent right nasal obstruction. The surgery was performed on September 11, 1997. As a result, plaintiff was unable to work from September 11, 1997 until September 29, 1997.
14. Dr. Soo last saw plaintiff on September 16, 1997 and noted that she continued to have some neck pain and headaches, but that she had finished her physical therapy and seemed to have plateaued. He noted that she would need her medications long-term. Dr. Soo gave plaintiff a four percent permanent partial disability rating for her neck pain and headaches and released her to return to his care as needed.
15. Plaintiff continued to have headaches and numbness in the right side of her face, pain in her right shoulder and numbness in the right arm and hand. Defendants sent her to a chiropractor at Dorrance Chiropractic center for an evaluation. Plaintiff received three treatments, but defendant-carrier refused to pay for the treatments. Plaintiff was forced to discontinue her treatment. In light of her continuing problems, these three treatments were reasonably necessary to effect a cure, give relief and tend to lessen the period of disability.
16. Plaintiff asked defendant-employer's nurse for a second opinion in light of her continuing problems. Defendants referred her to Dr. Barrie J. Hurwitz, an associate professor of neurology at Duke University Medical Center.
17. Dr. Hurwitz reviewed plaintiff's medical records and examined her on March 19, 1998. He noted a normal neurological examination. He opined that her complaints of intermittent headache may be migraine, and her complaints of arm pain and weakness are not associated with any fixed neurological deficit. He recommended continued conservative management under the care of her physician, but stated it would be reasonable to repeat the EMG and NCV due to plaintiff's complaints of worsening symptoms over the past month. Dr. Hurwitz suggested that if the studies are repeated, they be done across the Erb's point to exclude any evidence of thoracic outlet syndrome. Defendants denied authorization for these studies, stating that plaintiff's injuries were to her face and neck, and not to her arm.
18. At plaintiff's request and pursuant to the February 25, 1999 order of the deputy commissioner, plaintiff was evaluated by Dr. Keith A. Yount of Raleigh Facial Pain Services on May 10, 1999. He diagnosed plaintiff with myofascial pain dysfunction and cervical dysfunction and recommended conservative treatment, including physical therapy and biofeedback, for twelve visits.
19. Upon receipt of Dr. Yount's report, the deputy commissioner ordered on September 3, 1999 that defendants pay for the recommended treatment by Dr. Yount. It was further ordered that plaintiff return to Dr. Price, a neurosurgeon who had seen plaintiff in March, 1997 for treatment at defendants' expense.
20. On May 24, 2000, defendants accepted liability for plaintiff's arm condition, noting that plaintiff had an appointment scheduled with Dr. Price on May 30, 2000 for evaluation of that condition. Thus, plaintiff's arm condition is causally related to the December 28, 1995 injury by accident.
21. Additional EMGs and nerve conduction studies were performed by Dr. Soo on June 14, 2000 at the request of Dr. Price. The tests revealed no evidence of cervical radiculopathy, but plaintiff does have mild carpal tunnel syndrome on the right, which is consistent with her numbness and tingling in the right hand. He released her to return to his care as needed.
22. At the time of the hearing before the deputy commissioner, plaintiff was still having a great deal of facial pain on the right side, which she compared to "ice cream headaches". She complained of migraine headaches that she never had prior to the accident. Her right nasal passage felt restricted. She was having neck pain going down her right arm into her hand. The evidence of record is insufficient to find that plaintiff had reached maximum medical improvement with regard to her injuries.
23. Plaintiff has continued to work for defendant-employer but occasionally calls in sick, using her personal leave time.
24. As a result of the injury by accident, plaintiff was unable to work on the following additional times: eight hours on January 2, 1998, two hours on January 23, 1998, two hours on February 25, 1998, eight hours on April 3, 1998 and two hours on May 7, 1998. Plaintiff contended at oral arguments that defendants have not yet paid her for these dates. After the Full Commission hearing, though it is unclear from their records whether plaintiff had received compensation for these dates, defendants agreed to compensate plaintiff for the dates listed above.
25. After the deputy commissioner hearing, plaintiff made a motion requesting that she be allowed to seek treatment from Dr. Yount. However on April 26, 2001 Chairman Lattimore filed an Order designating Dr. T. Kern Carlton as the treating physician and this Order stands as filed. Plaintiff already has two local physicians, Dr. Mahan and Dr. Soo for medication management. Further, this order does not prevent Dr. Carlton from making a referral to another local physician for additional medication management.
26. Subsequent to the hearing before the deputy commissioner, plaintiff wrote several letters stating that her wages with defendant-employer were reduced and that she has not received timely raises in retaliation for her pending workers' compensation claim or related health problems. There is insufficient evidence of record to address this issue as this matter was raised post-hearing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 28, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendants that resulted in injury to plaintiff's face, nasal passage, head, neck, right shoulder and arm. N.C. Gen. Stat. § 97-2(6).
2. As a result of the December 28, 1995 injury by accident, plaintiff was temporarily and totally disabled from October 1, 1996 through October 21, 1996, April 14 1997 through April 28, 1997, July 22, 1997, August 21, 1997, September 11, 1997 through September 29, 1997 and for eight hours on January 2, 1998, two hours on January 23, 1998 two hours on February 25, 1998, eight hours on April 3, 1998 and two hours on May 7, 1998. Plaintiff is entitled to compensation at the weekly rate of $448.06 for these periods of time. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to medical compensation necessitated by the December 28, 1995 injury by accident, including all of the treatment received to date set forth above including the chiropractic treatments discussed above, and including any additional treatment that may be reasonably required to effect a cure, give relief and tend to lessen any period of disability. N.C. Gen. Stat. §§ 97-25, 97-25.1, 97-2(19).
 *********** AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the weekly rate of $448.06 for the periods set forth above in Finding of Fact 23 and Conclusion of Law 2. This compensation has accrued and shall be paid in a lump sum to plaintiff subject to a credit for any workers' compensation benefits previously paid, with no credit for time out of work for which plaintiff took her personal leave time.
2. Defendants shall pay all medical compensation arising from this injury by accident.
3. This matter is hereby assigned to the Nurses Section of the North Carolina Industrial Commission for case management in order to facilitate plaintiff receiving prompt and appropriate medical care for her continuing problems resulting from the injury by accident.
4. The issue of what, if any, permanent partial disability compensation shall be payable to plaintiff is reserved until such time as plaintiff reaches maximum medical improvement.
5. Defendants shall pay the costs of this action.
 ORDER
All issues raised by plaintiff since the date of hearing, November 20, 1998, before former Deputy Commissioner Margaret Morgan Holmes are outside the scope of this record before the Full Commission and should be raised in a separate Form 33, Request for Hearing. Further, plaintiff must properly complete and file a Form 25T with RSK Co. Claims Specialist Karen Ross to seek reimbursement for travel expenses related to the compensable injury by accident.
This the 28th day of February, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER